**\*E-FILED ON 11/15/05\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KENNETH W. HUNTER,<br><br>　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>　　　Defendant.<br>_____ / | Case No. C04-01662 HRL<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 11, 14]** |

　　　In this Social Security action, plaintiff Kenneth Hunter ("plaintiff") appeals a final decision by the Commissioner ("defendant") denying his application for disability insurance and supplemental security income benefits. Presently before this court is plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Plaintiff filed a reply, and the matter was submitted without oral argument.[1] Having considered the papers filed by the parties, and for the reasons set forth below, the court denies plaintiff's motion and grants defendant's cross-motion.

## I.  BACKGROUND

　　　Plaintiff is presently 53 years old. He went up the twelfth grade in high school, but did not graduate. His previous work experience includes sporadic work as a painter.

---

[1]　　　Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

1    On July 17, 2001, plaintiff was admitted to San Francisco General Hospital with a severe
2 infection in his right shoulder.  He underwent antibiotic therapy and surgery to have the infection
3 removed.  In addition to necrotic fasciitis, plaintiff experienced acute respiratory distress and required
4 ventilation.  He remained in the intensive care unit until August 24, 2001.

5    On June 6, 2002, plaintiff filed an application for disability insurance and supplemental security
6 income benefits, alleging respiratory problems, "[l]oss [of] a large muscle mass from right shoulder,"
7 and generalized pain throughout his body, and particularly in his lungs, right shoulder, back, legs and
8 stomach.  (Tr. 78-83).  Defendant denied the application initially and upon reconsideration, and
9 plaintiff requested a hearing before an administrative law judge ("ALJ").  The hearing was conducted
10 on October 15, 2003.  In a decision dated December 4, 2003, the ALJ concluded that plaintiff was
11 not disabled under the Social Security Act.  She found that plaintiff suffered from residuals of right
12 arm/shoulder necrotic fasciitis with muscle destruction, mild pulmonary restriction, and a history of
13 heroin addiction and alcohol abuse.  However, she concluded that claimant did not have an impairment
14 listed in or medically equal to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  The ALJ
15 further found that plaintiff's impairments did not prevent him from obtaining gainful employment.

16    On February 26, 2004, the Appeals Council denied plaintiff's request for review, and the
17 ALJ's decision became the final decision of the Commissioner.  Plaintiff now seeks judicial review of
18 that decision.

## II.  LEGAL STANDARD

20    Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's
21 decision denying benefits.  The Commissioner's decision will be disturbed only if it is not supported by
22 substantial evidence or if it is based upon the application of improper legal standards.  *Morgan v.*
23 *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d
24 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means "more than a mere
25 scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might
26 accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523; *see also Drouin v.*
27 *Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether substantial evidence
28 exists to support the Commissioner's decision, the court examines the administrative record as a

whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## III.  DISCUSSION

Plaintiff argues that the ALJ improperly (1) rejected the opinion of his treating physician and (2) relied on the testimony of the vocational expert in concluding that he could perform a security guard job.

### A.  Rejection of Treating Physician's Opinion

Plaintiff contends that the ALJ failed to give sufficient reasons for rejecting the opinion of his treating physician, Dr. Cameron Oba. Dr. Oba concluded that plaintiff was not able to perform sustained light work, needed to change positions every 15 minutes, could sit or stand for no more than an hour in an 8-hour workday, and could walk less than one hour in an 8-hour workday. (Tr. 11, 162-63). He opined that plaintiff's medical condition was "severe enough to warrant serious consideration for placing him on permanent disability." (*Id.*).

Dr. Oba's opinion conflicted with that of examining physician Dr. Basim Abdelkarim, who found that plaintiff did not exhibit significant physical restrictions and "with assistance he was able to fully abduct his right upper extremity." (Tr. 12, 144). As noted by the ALJ, Dr. Abdelkarim stated that based upon plaintiff's self-reported daily activities, plaintiff (1) is able to independently dress, use the restroom and shower; (2) spends most of his time watching television; (3) is able to walk 3-4 blocks to the store; (4) is able to do very light work and occasionally some gardening; and (5) smokes 2-3 cigarettes per day. (Tr. 11-12, 142). Dr. Abdelkarim stated that plaintiff's complaints about his physical limitations were slightly exaggerated, and found that plaintiff could stand or walk for 8 hours in an 8-hour workday and could sit without restriction in an 8-hour workday. (Tr. 12, 145). He also found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently with his right arm, and could lift 20 pounds frequently with his left arm. (*Id.*)

"Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes

3

1  'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in
2  the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Magallanes v.*
3  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  "The ALJ can 'meet this burden by setting out a
4  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
5  thereof, and making findings." *Id*.  "The ALJ need not accept the opinion of any physician, including a
6  treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."
7  *Id*. (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

8        Here, the ALJ chose to credit Dr. Abdelkarim's opinion over that of Dr. Oba, and there is
9  substantial evidence to support her findings.  The ALJ's written decision includes a detailed summary
10 of the facts, medical evidence and the conflicts between the reports of Drs. Oba and Abdelkarim.  (Tr.
11 9-15).  The ALJ noted that Dr. Abdelkarim's opinion was based upon his review of plaintiff's medical
12 records, plaintiff's statements as to his daily activities, as well as Dr. Abdelkarim's own medical
13 examination.  (Tr. 12).  She also noted that neither Dr. Abdelkarim nor Dr. Johanson, the medical
14 expert, found that the medical evidence supported a severe pulmonary disorder.  (Tr. 14, 141-46,
15 201, 204).  "The opinions of non-treating . . . physicians may also serve as substantial evidence when
16 the opinions are consistent with clinical findings or other evidence in the record." *Id*.; *see also*
17 *Magallanes*, 881 F.2d at 751 (to the extent that the non-treating physician's opinion rests on
18 objective clinical tests, it must be viewed as substantial evidence).

19       In discrediting Dr. Oba's opinion, the ALJ stated that while Dr. Oba could be considered a
20 "treating physician," the record indicates that plaintiff first visited Dr. Oba as a result of his application
21 for General Assistance.  (Tr. 11, 153).  She also noted that the only objective evidence upon which
22 Dr. Oba's opinion was based consisted of "old records, marked decreased breath sounds; scar and
23 atrophy of right shoulder/arm with weakness."  (Tr. 11, 153).  Further, as is borne out by the record,
24 the ALJ stated that Dr. Oba's clinical records for plaintiff consisted of (1) a two-page narrative dated
25 September 16, 2003, (2) a two-and-one-half page letter to plaintiff's attorney dated October 31,
26 2003 and (3) a check-the-box and fill-in medical/functional assessment form in September 2003.  (Tr.
27 11, 153, 159-86).
28

4

In discounting Dr. Oba's opinion as to the severity and functional impact of plaintiff's medical condition, the ALJ noted that Dr. Oba did not claim any special training in pulmonary disorders, his opinions were unsupported by any objective medical findings, and his letters provided no new objective medical evidence as to plaintiff's condition. (Tr. 14). Additionally, the ALJ stated that Dr. Oba did not indicate a particular course of treatment or prescribe medication for plaintiff's pulmonary or pain complaints and that he did not have a longitudinal record of treatment of plaintiff or any heightened knowledge of his actual health problems. (*Id.*). Further, the ALJ noted that Dr. Oba's assessment appeared to based largely upon plaintiff's subjective complaints, and that the assessment that plaintiff would need to change position every 15 minutes did not reasonably comport with plaintiff's stated complaints. (*Id.*).

The ALJ gave specific, legitimate reasons for discrediting Dr. Oba's opinion in favor of Dr. Abdelkarim's opinion, and her rejection of Dr. Oba's opinion is based upon substantial evidence.

### B. Vocational Expert's Testimony

Plaintiff argues that the ALJ improperly relied on the testimony of the vocational expert ("VE") in concluding that he retains the residual functional capacity ("RFC") to perform a wide range of light work, including work as a security guard. He has submitted website job postings as Exhibit A to his summary judgment motion to support his contention that he is not qualified for a security guard position. Putting aside that plaintiff's Exhibit A comprises materials outside the administrative record on review, the court nevertheless concludes that the Commissioner's decision must be affirmed.

In determining whether a claimant is disabled within the meaning of the Social Security Act, an ALJ engages in a five-step sequential evaluation. *See* 20 C.F.R. § 416.920. At Step Five, the Social Security Administration considers the claimant's RFC, age, education and work experience to determine whether he can make an adjustment to other work. *Id.*, § 416.920(a)(4)(v). If the claimant can make an adjustment to other work, he will be found not disabled. *Id.* In order to meet her burden at Step Five, the Commissioner may rely on a VE's testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Id*. at 1162-63.

United States District Court

For the Northern District of California

1    Plaintiff first argues that the ALJ's finding that he can perform a "wide range of light work" is
2    not supported by a proper evaluation of the medical evidence. "An ALJ must propose a hypothetical
3    that is based on medical assumptions supported by substantial evidence in the record that reflects each
4    of the claimant's limitations." *Osenbrock*, 240 F.3d at 1163. Here, the ALJ asked the VE to
5    consider an individual of the same age, education and work experience as plaintiff with an RFC based
6    upon Dr. Abdelkarim's findings and conclusions. (Tr. 15, 206-207). As discussed above, the ALJ
7    properly relied upon Dr. Abdelkarim's opinion as to plaintiff's medical condition. Accordingly, the
8    court concludes that the VE's testimony was based upon a valid hypothetical.

9    Plaintiff next contends that the ALJ erred in concluding that he is capable of performing a
10   security guard job despite (1) the VE's testimony that plaintiff does not have transferable skills to work
11   at the light or sedentary exertional levels; and (2) the classification of a security guard job as "semi-
12   skilled" in the Dictionary of Occupational Titles ("DOT"). Plaintiff claims that the ALJ should have
13   rejected the VE's testimony that he could perform a security guard job because Social Security Ruling
14   ("SSR") 83-10 provides that the "[a]bility to perform skilled or semiskilled work depends on the
15   presence of acquired skills which may be transferred to such work from past job experience above the
16   unskilled level or the presence of recently completed education which allows for direct entry into
17   skilled or semiskilled work." SSR 83-10. Here, the ALJ did not specifically determine that plaintiff
18   lacked transferable skills; but she did not cite any evidence to contradict the VE's testimony on this
19   point, and the Commissioner has offered no reason to reject it. The ALJ was thus obliged to identify
20   unskilled jobs available in significant numbers that are within plaintiff's RFC.

21   Here, the ALJ concluded that plaintiff could perform a security guard or security watch
22   attendant job at the light/unskilled level. (Tr. 15). In essence, then, the disputed issue is whether the
23   security guard position was properly classified as an unskilled position. Plaintiff contends that the ALJ
24   erred in relying on the VE's testimony in concluding that he could perform a security guard job when
25   the DOT classifies the job as a "semi-skilled" position. An ALJ may rely on expert testimony which is
26   contrary to the DOT where there is persuasive evidence to support the deviation. *Johnson v.*
27   *Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). In doing so, the ALJ must resolve any conflicts
28

1 between a VE's testimony about jobs that a claimant can perform and the DOT's classification of

2 what is required to perform those jobs:

> Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is a reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p. Further, information about jobs that is not listed in the DOT may come from a VE's experience in job placement or career counseling. *Id*.

At the hearing, the apparent conflict between the DOT classification and the VE's testimony was not addressed by the ALJ, but was nonetheless discussed by the VE on cross-examination by plaintiff's counsel. The VE explained that in his experience, not all security guard jobs required extensive writing skills. As noted by the ALJ, the VE testified that based upon his experience, "5th or 6th grade level skill would certainly be consistent with the type of work that's required in simple records that most of these individuals keep." (Tr. 15, 211). The court finds no error in the ALJ's reliance upon the VE's testimony.

Finally, plaintiff argues that as a result of his past incarceration, he is not qualified to be a security guard. He contends, in essence, that the ALJ was precluded from finding that he could perform such a job because his criminal record is akin to a "mental limitation" of "[n]ot being trustworthy." However, there is nothing in the medical record establishing plaintiff's assertion as to a claimed "mental limitation." The ALJ was therefore not obliged to include plaintiff's acknowledged lack of trustworthiness in the hypothetical posed to the VE.

In any event, the ALJ correctly concluded that plaintiff's level of trustworthiness was not a valid vocational qualification relevant to the disability analysis. Indeed, an individual will be deemed disabled:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

7

42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers . . . . It does not matter whether . . . [y]ou would be hired if you applied for work."); 20 C.F.R. § 416.966(a) (same); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1987) ("This circuit has consistently held, in accordance with these statutes and regulations, that the definition of disability is based upon the *existence* of jobs in significant numbers in the national economy.").

The court finds no error by the ALJ in her step five finding that plaintiff was not disabled.

## IV.  ORDER

Based on the foregoing, plaintiff's motion for summary judgment is DENIED; and defendant's cross-motion for summary judgment is GRANTED.  The Clerk of the Court shall close the file.

Dated: November 15, 2005

/s/ Howard R. Lloyd
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1  5:04-cv-01662 Notice will be electronically mailed to:

2  Harvey P. Sackett     hps@hpspc.com

3  Michael A. Cabotaje     Michael.Cabotaje@ssa.gov

4  Sara Winslow     sara.winslow@usdoj.gov

5  Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.